IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:15-HC-2205-FL

| | | |
|---|---|---|
| VICTOR NNAMDI INYAMA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| STATE OF NORTH CAROLINA, | ) | |
| | ) | |
| Respondent. | ) | |

Petitioner, a state inmate, petitions this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter comes before the court on respondent's motion for summary judgment (DE 14) pursuant to Federal Rule of Civil Procedure 56(a). The issues raised have been fully briefed and are ripe for adjudication. For the following reasons, the court grants respondent's motion for summary judgment.

**STATEMENT OF CASE**

On October 15, 2012, petitioner, in the Wake County Superior Court, pleaded guilty to possession with the intent to sell or deliver marijuana, possession of a firearm by a felon, and of having achieved the status of habitual felon. See State v. Inyama, 758 S.E.2d 161, 164 (N.C. App. 2014). He then was sentenced to a term of 77-102 months imprisonment. Id. Petitioner subsequently filed a notice of appeal to the North Carolina Court of Appeals raising issues related to a pretrial motion to suppress which the trial court had denied. Id. On May 6, 2014, the court of appeals affirmed the trial court's ruling. Id. at 168. On August 19, 2014, the North Carolina

Supreme Court denied petitioner's petition for discretionary review. See State v. Inyama, 367 N.C. 522, 762 S.E.2d 205 (2014).

On January 21, 2015, petitioner filed a *pro se* motion for appropriate relief ("MAR") in the Wake County Superior Court, which the superior court denied on July 6, 2015. (Resp't's Mem. Exs. 10; Pet. Attach. p. 11.) On August 7, 2015, petitioner filed a *pro se* post-conviction petition for a writ of certiorari in the North Carolina Court of Appeals, seeking review of the superior court's July 6, 2015, order denying petitioner's MAR. (Resp't's Mem. Ex. 12.) Certiorari was denied on August 20, 2015. (Pet. Attach. p. 10.)

On September 14, 2015, petitioner filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 raising a single claim.[1] Specifically, petitioner alleged that he was detained and his apartment was searched in violation of the Fourth Amendment to the United States Constitution. Petitioner subsequently filed a motion to appoint counsel, which was denied. Respondent then filed a motion for summary judgment, which was fully briefed.

**STATEMENT OF FACTS**

The facts as summarized by the North Carolina Court of Appeals are as follows:

> On 17 August 2011, defendant was arrested on an outstanding warrant for failure to appear on charges of speeding and driving while license revoked at an apartment where marijuana and firearms were found. As a result of the marijuana and firearms, additional arrest warrants were served for possession with intent to sell or deliver marijuana and possession of a firearm by a felon.
>
> On 28 November 2011, a Wake County Grand Jury returned separate bills of indictment indicting defendant on charges of possession with

---

[1] On September 15, 2015, United States Magistrate Judge Robert B. Jones, Jr.'s issued a notice of deficiency informing petitioner that pages 8-11 of his petition were missing. Petitioner filed a complete copy of his petition on September 24, 2015.

2

intent to sell or deliver marijuana and possession of a firearm by a felon. The following day, a Wake County Grand Jury also indicted defendant for attaining the status of an habitual felon.

Prior to trial, on 4 October 2012, defendant filed a motion "to suppress any evidence obtained from [his] person, the [apartment] where [he] was arrested, and any statements made by [him] as a result of searches and seizures of his person and/or residence[.]" In the motion, defendant challenged the validity of three warrants issued on 17 August 2011, arguing the warrants were not based on sufficient or legally obtained evidence within the affidavits supporting their issuance. The motion came on to be heard in Wake County Superior Court before the Honorable Paul C. Ridgeway on 15 October 2012.

Evidence presented during the suppression hearing tended to show that members of the Raleigh Police Department's Gang Suppression Unit became interested in defendant on 16 August 2011 when Dominique McLaughlin, with whom the police had dealt in the past, identified defendant by name as the owner of drugs and firearms found during the search of McLaughlin's residence. The following day, Officer Eddie Camacho ran defendant's name through the warrant database and discovered an outstanding warrant for defendant's arrest for failure to appear on charges of speeding and driving while license revoked. Camacho also realized that he had previously encountered defendant during a traffic stop on 25 May 2011. At the time, defendant was driving a 1998 Cadillac DeVille, license plate number ACC–7005.

DMV records for the vehicle indicated it was registered to Natasha Montgomery of 2721 Milburnie Road. Although the vehicle was registered to Montgomery, Camacho recalled that during his prior encounter with defendant at the traffic stop, defendant acknowledged the car was registered in his girlfriend's name but stressed that it was his vehicle because he paid for it.

In search of defendant, Camacho and another officer went to the address to which the vehicle was registered on Milburnie Road. Montgomery's stepfather, Phillip Becoat, answered the door and spoke with the officers. The officers informed Becoat that they were not searching for Montgomery, but for Montgomery's boyfriend, naming defendant. Becoat responded that defendant and Montgomery "used to live there at 2721 Milburnie Road[,]" but "were [now] living together in an apartment complex off New Bern."

3

With the information from Becoat, Camacho searched the City of Raleigh's utility records to find the apartment. His search revealed that Montgomery lived at 217 Merrell Drive, Apartment 101.

When the officers arrived at the apartment, they noticed the 1998 Cadillac DeVille and another vehicle registered to Montgomery in the parking lot near the apartment. Upon approaching the front door of the apartment, Camacho could hear male voices inside. Camacho, however, could not understand what the voices were saying or determine how many people were inside. Camacho then knocked on the door. He could hear people frantically moving around inside the apartment, but no one answered the door. Camacho continued to knock and announce himself for five to ten minutes before calling his supervisor for assistance.

Camacho's supervisor arrived shortly thereafter and knocked on the door. Again, no one responded. Camacho's supervisor then found Montgomery's phone number in a police database and called Montgomery. Montgomery told the officers that she was at work, no one should be inside the apartment, she did not know who was in the apartment, and defendant was last in the apartment a few days earlier. The officers had received a key to the apartment from apartment management, but Montgomery would not consent for the officers to enter the apartment to search for defendant.

At that time, Camacho applied for and obtained a warrant to search the apartment for defendant ("warrant one").

When Camacho returned with warrant one, a Selective Enforcement Unit ("SEU") already on the scene executed the warrant as Camacho and other officers maintained a perimeter. The SEU was made aware that multiple people were inside and defendant had prior firearms violations. The SEU used the key obtained from management to enter the apartment. Upon entry, three men, including defendant, exited a back room of the apartment at the orders of the SEU and were detained outside. The SEU then performed a protective sweep of the apartment, during which Officer C.R. Matthews noticed what he believed to be a partially smoked marijuana cigarette lying on the floor in one of the bedrooms in plain view. Officer Matthews informed Camacho of the marijuana cigarette and Camacho entered the apartment and, based on its appearance and smell, confirmed that the item on the bedroom floor was in fact a partially smoked marijuana cigarette.

4

Based on the marijuana cigarette, Camacho applied and obtained a warrant to search the apartment for "controlled substances, paraphernalia, documents indicating dominion or ownership of residence, packaging material, currency, firearms, ammunition, cellular telephones, and any and all evidence relating to the criminal [p]ossession of controlled substances[ ]" ("warrant two"). During the execution of warrant two, officers found drugs, drug paraphernalia, materials for packaging drugs, firearms, and ammunition in the apartment.

A third warrant ("warrant three") was later issued to search three vehicles in the parking lot, including the 1998 Cadillac DeVille associated with defendant. Additional firearms, marijuana stems, a receipt with defendant's name on it, and a picture of defendant with a group of people were recovered from the 1998 Cadillac DeVille.

Upon consideration of the testimony, warrant applications, and arguments, the trial court denied defendant's motion in open court stating the following:

> I've reviewed the evidence submitted in this case, the four corners of the search warrants as well as the case law handed up. And with respect to each of the three warrants, I find that, based on the four corners of the application of the search warrant, the magistrate had substantial basis for concluding that there was probable cause to believe that the defendant—in the case of the first search warrant, the defendant would be found at the location described therein; and with respect to warrants two and three, that evidence of a crime would be found at those locations described therein.

Inyama, 758 S.E.2d at 163.

# DISCUSSION

A. Motion for Summary Judgment

   1. Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

The standard of review for habeas petitions brought by state inmates, where the claims have been adjudicated on the merits in the state court, is set forth in 28 U.S.C. § 2254(d). That statute states that habeas relief cannot be granted in cases where a state court considered a claim on its merits unless the decision was contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court, or the state court decision was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d)(1) and (2). A state court decision is "contrary to" Supreme Court precedent if it either arrives at "a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Supreme Court. Williams v. Taylor, 529 U.S. 362, 406 (2000). A state court

decision "involves an unreasonable application" of Supreme Court law "if the state court identifies the correct governing legal principle from [the Supreme] Court's cases but unreasonably applies it to the facts of the state prisoner's case." Id. at 407; see White v. Woodall, 134 S. Ct. 1697, 1702–07 (2014); Nevada v. Jackson, 133 S. Ct. 1990, 1992 (2013) (per curiam). A state court decision also may apply Supreme Court law unreasonably if it extends existing Supreme Court precedent to a new context where it does not apply, or unreasonably refuses to extend existing precedent to a new context where it should apply. Id. The applicable statute

> does not require that a state court cite to federal law in order for a federal court to determine whether the state court's decision is an objectively reasonable one, nor does it require a federal habeas court to offer an independent opinion as to whether it believes, based upon its own reading of the controlling Supreme Court precedents, that the [petitioner's] constitutional rights were violated during the state court proceedings.

Bell v. Jarvis, 236 F.3d 149, 160 (4th Cir. 2000), cert. denied, 534 U.S. 830 (2001). Moreover, a determination of a factual issue made by a state court is presumed correct, unless rebutted by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1).

    2.    Analysis

In his sole claim, petitioner asserts that his Fourth Amendment rights were violated when he was detained and when his apartment was searched by the Raleigh Police Department. Specifically, petitioner asserts that

> On 8/17/2011, I was detained outside of 217-101 Merrell Dr., Pursuant to a search warrant for my person. After I was detained, Raleigh Police officer Matthews entered the residence and conducted a 'protective sweep.' Upon Performance of the 'Protective Sweep,' he found in plain view' a marijuana cigarette which was used as probable cause to obtain another search warrant to search the apartment. Upon execution of the 2nd search warrant, 3 firearms,

7

     and 12 ounces of marijuana was found inside of the residence. Later
     a 3rd (sic) search warrant was executed on three vehicles outside of
     the residence and two firearms was (sic) seized.

(Pet. (DE 8), pp. 6-7.) The court of appeals adjudicated petitioner's Fourth Amendment claims, and found "there was a substantial basis for the magistrate to determine there was probable cause to issue the warrants." Inyama, 758 S.E.2d at 168.

  Generally, a prisoner may not collaterally attack a state conviction on the grounds that illegal evidence was admitted at trial where the state "has provided an opportunity for full and fair litigation of a Fourth Amendment claim." Stone v. Powell, 428 U.S. 465, 494 (1976); see also, Massey v. Ballard, No. 2:08-CV-936, 2009 WL 2916889, at *13 (S.D.W. Va. Sept. 8, 2009) ("[T]o the extent that Petitioner has contended that the tape recording of his telephone conversation with the alleged victim was an illegal search and seizure, that claim is not cognizable in federal habeas corpus because Petitioner already had an opportunity for full and fair litigation of that issue . . . ."), appeal dismissed, 363 F. App'x 243 (4th Cir. 2010).

  Here, petitioner was provided a full and fair opportunity to raise and litigate his Fourth Amendment claim, and in fact raised it at a suppression hearing in the trial court, in his MAR, and on direct appeal. Additionally, the court of appeals' adjudication of this claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Likewise, the state court's ruling was not based on an unreasonable determination of facts, in light of the evidence presented in the state-court proceeding. See 28 U.S.C. § 2254(d)-(e). Thus, respondent's motion for summary judgment is GRANTED for this claim.

B.  Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases ("Habeas Rules") provides "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Having determined petitioner is not entitled to relief and respondent is entitled to dismissal of the petition, the court considers whether petitioner is nonetheless entitled to a certificate of appealability with respect to one or more of the issues presented in his habeas petition.

A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a petitioner's constitutional claims have been adjudicated and denied on the merits by the district court, the petitioner must demonstrate reasonable jurists could debate whether the issue should have been decided differently or show the issue is adequate to deserve encouragement to proceed further. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

Where a petitioner's constitutional claims are dismissed on procedural grounds, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition [or motion] states a valid claim of denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" Rose v. Lee, 252 F.3d 676, 684 (4th Cir. 2001) (quoting Slack, 529 U.S. at 484). "Each component of the § 2253(c) showing is part of a threshold inquiry, and a court may find that it can dispose of the application in a fair and prompt manner if it proceeds first to resolve the issue whose answer is more apparent from the record and arguments." Slack, 529 U.S. at 484-85.

After reviewing the claims presented in the habeas petition in light of the applicable standard, the court finds reasonable jurists would not find the court's treatment of any of petitioner's claims debatable or wrong and none of the issue are adequate to deserve encouragement to proceed further. Accordingly, a certificate of appealability is denied.

## CONCLUSION

For the foregoing reasons, respondent's motion for summary judgment (DE 14) is GRANTED. The certificate of appealability is DENIED. The clerk of court is DIRECTED to close this case.

SO ORDERED, this the 7th day of July, 2016.

_____
LOUISE W. FLANAGAN
United States District Judge